Filed 11/3/20  In re K.D. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re K.D., a Person Coming Under the Juvenile Court Law. | B304860 (Los Angeles County Super. Ct. No. 19CCJP06476A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> E.G., <br><br> Defendant and Appellant. | |

APPEAL from findings and orders of the Superior Court of Los Angeles County, Stephen C. Marpet, Judge Pro Tempore. Affirmed.

Erin Riley Khorram, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Stephanie Jo Reagan, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

On February 10, 2020, the juvenile court declared K.D. (minor, born 2013) a dependent of the court pursuant to Welfare and Institutions Code section 300, subdivision (b)(1).[1] Among its dispositional orders, the court required appellant E.G. (mother) to submit to drug testing if suspected of being under the influence by the Los Angeles County Department of Children and Family Services (DCFS). On appeal, mother contends, first, that there was insufficient evidence to support the court's jurisdictional finding that she knew or should have known about substance abuse by minor's father, J.D. (father),[2] and failed to protect minor; and, second, that the court abused its discretion by ordering her to drug test.

We affirm.

**BACKGROUND**

**Referral and Initial Investigation**

In August 2019, DCFS received a referral alleging that mother and father emotionally abused minor through their

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Father is not a party to this appeal.

2

ongoing domestic violence and substance abuse and sales in the family home.

A DCFS social worker interviewed the family on August 27, 2019. Both mother and father admitted that they argued but denied physical violence. Father also denied using drugs or alcohol. Minor stated that she did not know what drugs or alcohol were and denied all forms of abuse and neglect. According to mother and father, minor was not enrolled in school because she was missing a physical examination due to the suspension of Medi-Cal benefits.

Father tested positive for methamphetamines and amphetamines on August 28, 2019.[3] When contacted by the social worker regarding the results, father admitted his drug use. Mother claimed that she had no knowledge of and had never witnessed father's drug use.

Mother missed a drug test on August 28, 2019, but tested negative on September 3, 2019. The social worker contacted mother on September 19, 2019, regarding a second drug test. Mother made excuses regarding why she could not get tested that "seemed erratic" to the social worker, including "'why did you wait so long to drug test me again?'" She felt frustrated being asked to do so many things when it was father who had tested positive, and she stated that she did not have time to do what DCFS requested.

Minor was enrolled in school as of September 16, 2019.

---

[3] According to his probation officer, father tested positive for methamphetamines in July 2019. The record also reflects that father had numerous drug-related arrests and, in August 2019, was convicted of possession of a controlled substance (Health & Saf. Code, § 11377).

**Dependency Petition**

On October 4, 2019, DCFS filed a single-count dependency petition seeking the juvenile court's exercise of jurisdiction over minor. Brought under section 300, subdivision (b)(1) (failure to protect), the petition alleged that father had a history of substance abuse and was a current abuser of methamphetamines and amphetamines, which rendered him unable to provide regular care and supervision of minor. Mother knew or reasonably should have known about father's substance abuse yet failed to protect minor by allowing father to reside in the same home as minor and have unlimited access to her.

**Detention Hearing**

At the detention hearing on October 7, 2019, the juvenile court found that a prima facie showing had been made that minor was a person described by section 300. Minor was released to mother and father under DCFS supervision.

**Father's Arrest**

Father was arrested on October 31, 2019, on suspicion of murder. A DCFS investigator interviewed father in custody. Father reported that he had been in an on-again, off-again relationship with mother for 24 to 25 years. In addition to minor, mother and father shared an adult daughter. Father began using alcohol and marijuana when he was 15 years old and methamphetamines when he was 20 years old. For the past few years, he had used methamphetamines daily. He admitted to having a drug problem and also stated that he had a history of gang affiliation.

Mother was interviewed in November 2019. She stated that she met father when she was 13 years old, and they had "dated 'on/off' since then." They had lived together since minor's

4

birth, but he was always in and out of jail. Mother was aware that father had used methamphetamines in the past, but she did not know about his current use. Mother "appear[ed] stressed and somewhat overwhelmed" by financial difficulties and father's incarceration. She was, however, cooperative and receptive to services.

In December 2019, the DCFS investigator spoke to a detective involved in father's criminal case. According to the detective, there was no reason to believe that mother was involved in the murder and no drugs or drug paraphernalia were found during a search of the house.

Based on father's incarceration, on December 9, 2019, the juvenile court granted an ex parte request by DCFS to detain minor from father.

**Last Minute Information for the Court**

In early February 2020, DCFS reported that mother and minor were receiving family preservation services, in which mother had been cooperative. Mother missed a drug test on January 15, 2020, due to a work conflict, but she tested negative on January 22, 2020.

**Adjudication Hearing**

On February 10, 2020, mother's counsel argued that the juvenile court should strike the dependency petition's allegation that mother failed to protect minor from father's substance abuse. DCFS and minor's counsel asked the court to sustain the petition as pled, which the court did based on a preponderance of the evidence. Minor was declared a dependent of the court, removed from father, and released to mother under DCFS supervision.

5

The juvenile court ordered a developmentally appropriate parenting program and individual counseling for mother. The court also ordered mother to submit to on-demand drug tests only if DCFS suspected that she was under the influence. Mother's counsel had "[n]o objection to drug testing" but asked if mother missed a test that "it be walked on for further orders rather than [for] mother [to] enter a program." The court agreed.

This timely appeal ensued.

## DISCUSSION

## I. Substantial Evidence Supports the Challenged Jurisdictional Finding.

A. <u>Relevant law and standard of review</u>

Under section 300, subdivision (b)(1), the juvenile court has jurisdiction over and may adjudge to be a dependent of the court a "child [who] has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, or the willful or negligent failure of the child's parent . . . to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, . . . or by the inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness, developmental disability, or substance abuse."

"[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. The subdivision[] at issue here require[s] only a 'substantial risk' that the child will be abused or neglected. The legislatively declared purpose . . . 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being

6

exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm.*' (§ 300.2, italics added.)" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

"The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.) "'[T]he finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm[]'" to a child "six years old or younger at the time of the jurisdiction hearing[.]" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219 (*Christopher R.*).) For a child "'of such tender years . . . the absence of adequate supervision and care poses an inherent risk to [his or her] physical health and safety.'" (*Id.* at p. 1216; see also *In re Drake M.* (2012) 211 Cal.App.4th 754, 766–767 (*Drake M.*).)

We review jurisdictional findings for substantial evidence. (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161.) "Evidence is "'[s]ubstantial'" if it is "'reasonable, credible, and of solid value.'" [Citation.] We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. Instead, we draw all reasonable inferences in support of the findings, view the record in favor of the juvenile court's order and affirm the order even if other evidence supports a contrary finding." (*Id.* at pp. 1161–1162.)

B. <u>Analysis</u>

Mother does not challenge the juvenile court's finding that father abused substances. Nor could she reasonably do so, given the ample evidence provided by father's positive drug tests, his drug-related criminal history, and his admission that for the past

7

few years he had used methamphetamines on a daily basis and had a drug problem.[4] (See *In re R.R.* (2010) 187 Cal.App.4th 1264, 1284 [a father who had a long history of methamphetamine use, had recently been hospitalized due to drug use, and had lied about his drug use had "a compromised ability to care for his child, thus justifying the assumption of jurisdiction"].) Instead, mother argues that substantial evidence does not support the finding that she knew or should have known about father's substance abuse and failed to protect minor from it. We disagree.[5]

---

[4] This is not a case in which the juvenile court conflated drug *use* with drug *abuse*. (Cf. *In re L.C.* (2019) 38 Cal.App.5th 646, 648, 652 [holding that a legal guardian's occasional methamphetamine use did not support dependency jurisdiction under section 300, subdivision (b), where "the record support[ed] only the conclusion that [the legal guardian] used methamphetamine" but did "not support the conclusion that [the legal guardian] abused it"].)

[5] DCFS contends that mother's claim is not justiciable because dependency jurisdiction based on father's conduct would continue irrespective of the jurisdictional finding regarding mother's conduct. "Because the juvenile court assumes jurisdiction of the child, not the parents, jurisdiction may exist based on the conduct of one parent only." (*In re J.C.* (2014) 233 Cal.App.4th 1, 3.) "However, when, as here, the outcome of the appeal could be 'the difference between [mother]'s being an "offending" parent versus a "non-offending" parent,' a finding that could result in far-reaching consequences with respect to these and future dependency proceedings, we find it appropriate to exercise our discretion to consider the appeal on the merits." (*In re Quentin H.* (2014) 230 Cal.App.4th 608, 613.)

Mother had known father since she was 13 years old and had been in a relationship with him for over 20 years. They shared two children and a home. Mother reported that father was always in and out of jail and that she was aware of his past methamphetamine use. The juvenile court did not need to credit mother's assertion that she was unaware of his continuing, daily drug use. (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043 ["A trier of fact is free to disbelieve a witness, even one uncontradicted, if there is any rational ground for doing so"].) Even if mother did not actually know that father was abusing drugs, the court could reasonably infer that she should have known.

Because minor was six years old at the time of the adjudication hearing, she was a child of "'tender years'" and father's substance abuse constituted prima facie evidence of his inability to provide regular care of her, resulting in a substantial risk of harm.[6] (*Christopher R.*, *supra*, 225 Cal.App.4th at p. 1219.) Despite the risk father posed to minor, mother allowed him to live in the same home as minor and, it can be inferred, have unlimited access to her. This was substantial evidence from which the juvenile court could find that mother failed to protect minor.

Mother argues that, at the time of the adjudication hearing, father no longer posed a threat to minor because he was

---

[6]     Because of this presumption and the fact that evidence of actual neglect is not required for a juvenile court to properly exercise dependency jurisdiction (*In re I.J.*, *supra*, 56 Cal.4th at p. 773), mother's contention that neither DCFS nor the juvenile court identified a specific actual or potential harm to minor resulting from father's substance abuse does not warrant reversal.

incarcerated and not living in the home. It is certainly true that, "[w]here jurisdictional allegations are based solely on risk to the child, and not on past injury, a juvenile court ordinarily determines whether a substantial risk of harm exists at the time of the jurisdiction hearing[.]" (*In re J.M.* (2019) 40 Cal.App.5th 913, 921.) But here, although father remained in custody after his October 2019 arrest when the February 2020 adjudication hearing was held, nothing in the record suggests that he had been convicted. Father had previously returned to the family home after periods in jail. The reasonable inference follows that father could be released from custody at any time and, without the juvenile court's intervention, return to the family home.

Because "[a] parent's "'[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue[]'" (*Christopher R.*, *supra*, 225 Cal.App.4th at p. 1216), the juvenile court could also infer that father's substance abuse would continue, as would mother's failure to protect minor from it. This was substantial evidence of a current risk of harm. (See *In re Madison S.* (2017) 15 Cal.App.5th 308, 318 ["Substantial evidence may include inferences, so long as any such inferences are based on logic and reason and rest on the evidence"].)

## II. The Juvenile Court Did Not Abuse Its Discretion by Ordering Mother to Drug Test.

### A. Relevant law and standard of review

A juvenile court has broad authority to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of" a dependent child. (§ 362, subd. (a).) This includes directing reasonable orders to the parent of the dependent child. (§ 362, subd. (d).) "The court's

broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion, permits the court to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise to the dependency proceedings." (*In re K.T.* (2020) 49 Cal.App.5th 20, 25.)

Absent a clear abuse of discretion, we will not disturb a dispositional order. (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311; see also *In re A.B.* (2014) 225 Cal.App.4th 1358, 1366 ["A juvenile court abuses its discretion if its decision is arbitrary, capricious or patently absurd"].)

B. Analysis

Mother not only failed to object to the juvenile court's order that she submit to drug testing upon suspicion of being under the influence, but her counsel affirmatively stated that there was "[n]o objection to drug testing." Mother therefore forfeited her challenge to the order on appeal. (See *In re Anthony Q.* (2016) 5 Cal.App.5th 336, 345 ["the forfeiture doctrine applies in dependency cases and the failure to object to a disposition order on a specific ground generally forfeits a parent's right to pursue that issue on appeal"].)[7]

---

[7] Mother's notice of appeal indicates that she appeals the declaration of dependency with a review of the section 300 jurisdictional findings. We note that it does not indicate any challenge to the dispositional order regarding drug testing. Although we liberally construe the notice of appeal (Cal. Rules of Court, rule 8.100(a)(2)), this omission further supports a finding of forfeiture.

11

Forfeiture aside, mother's argument fails on the merits. Requiring mother to submit to a drug test if DCFS suspected her of being under the influence was eminently reasonable given mother's denial that she was aware of father's current, daily methamphetamine use. Regardless of whether mother was untruthful regarding her knowledge of father's substance abuse or was blind to it, the juvenile court could infer the possibility that mother's own substance use affected her judgment and ability to protect minor in this regard. The fact that mother missed a drug test in August 2019 and another in January 2020 further supports such an inference. (See *Christopher R.*, *supra*, 225 Cal.App.4th at p. 1217 [juvenile court could properly view each missed drug test as "the equivalent of a positive test result"].)[8]

---

[8] We find that the cases relied upon by mother are distinguishable. In *In re Sergio C.* (1999) 70 Cal.App.4th 957, 960, the appellate court reversed a juvenile court's order for random drug testing of a father where the only evidence of his drug use was "the unsworn and uncorroborated allegation of an admitted drug addict who ha[d] abandoned her children." *Drake M.*, *supra*, 211 Cal.App.4th at pages 769–770 also involved an order for random drug testing of a father even though there was no evidence that he had a substance abuse problem. Here, in contrast, mother was ordered to submit to drug testing only upon the suspicion that she was under the influence.

Finally, in *In re Basilio T.* (1992) 4 Cal.App.4th 155, 160, 172–173, the appellate court reversed the inclusion of a substance abuse component in a reunification plan—specifically, drug testing and substance abuse therapy—where nothing in the record indicated that either parent had a substance abuse problem. Here, there is a nexus between father's substance

Because there was nothing arbitrary, capricious, or patently absurd in the juvenile court's order, we find no abuse of discretion.  (See *In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642 ["An abuse of discretion occurs when the juvenile court has exceeded the bounds of reason by making an arbitrary, capricious or patently absurd determination"].)

## DISPOSITION

The findings and orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT

---

abuse and the exercise of dependency jurisdiction, and mother was not ordered to participate in substance abuse therapy.